UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLD LINE LIFE INSURANCE COMPANY OF
AMERICA,

          Plaintiff/Counter-Defendant,      CIVIL CASE NO. 02-40239

v.

                                                           HONORABLE PAUL V. GADOLA
DAVID K. GARCIA,                              U.S. DISTRICT COURT

          Defendant/Counter-Claimant.
_____/

**ORDER**

Now before the Court is Defendant/Counter-Claimant ("Defendant") David K. Garcia's renewed motion for summary judgment pursuant to Fed. R. Civ. P. 56. This motion was filed on November 18, 2005 following remand from the Court of Appeals for the Sixth Circuit. *See Old Line Life Ins. Co. of Am. v. Garcia*, 418 F.3d 546 (6th Cir. 2005) (amending *Old Line Life Ins. Co. of Am. v. Garcia*, 411 F.3d 605 (6th Cir. 2005) and reversing *Old Line Life Ins. Co. of America v. Garcia*, 309 F. Supp. 2d 966 (E.D. Mich. Mar 18, 2004)). For the following reasons, Defendant's motion will be granted in part, denied in part.

**I.    Background**

    **A.    Factual History[1]**

On January 12, 2001, just four days before her sixty-ninth birthday, Patricia F. Garcia

---

[1] Much of the factual history contained in this order and opinion is adopted from the Court's March 18, 2004 order. *See Old Line Life Ins. Co. of Am. v. Garcia*, 309 F. Supp. 2d 966.

("Garcia") applied for a $2,000,000.00 term life insurance policy with Plaintiff Old Line Life Insurance Company of America ("Old Line"). Mrs. Garcia named her son, David K. Garcia, now the defendant and counter-claimant, as the sole beneficiary.

At the time Garcia applied for this coverage she had three other term life insurance policies in effect. These three policies were not issued by Old Line, but instead, by other insurance companies not involved in this cause of action. The coverage of the then-existing policies totaled $2,000,000.00. These policies existed in the form of a $500,000.00 policy with a term end-date of 2003, a $1,000,000.00 policy with a term end-date of 2008, and a $500,000.00 policy with a term end-date of 2009. Although Garcia indicated the Old Line policy was a "replacement" policy, Garcia failed to cancel her then existing policies.

On the application for the new insurance policy, Old Line asked a number of questions about Garcia's personal history, both medical and professional. When responding to the questions about her current occupation, Garcia claimed that she was employed as President of "Garcia Lab." **Pl. Mot., Ex. A, p. 2. She also claimed that her annual income was "$100,000+." Pl. Mot., Ex. A, p. 2**. With respect to her medical history, when asked if she had "ever been diagnosed as having, been treated for, or consulted a licensed health care provider" for "any cancer, cysts, tumors, masses, or other such abnormalities," Garcia responded that she had not. **Pl. Mot., Ex. B, p. 2**.

Following Garcia's written application, Plaintiff Old Line subsequently conducted a thorough medical examination that included the collection of blood and urine samples, an EKG test, a telephonic medical interview conducted by a consumer investigative organization, and a review of the medical records created by Garcia's personal physician, Bruce Barbour, M.D. After all of

this, and following a review by Old Line staff, three underwriters approved the pending issuance of the $2,000,000.00 policy for Garcia on April 5, 2001. Def. **Mot., Ex. B, pp. 3-4**. The approved policy was dated April 10, 2001.

Following Plaintiff's approval of the issuance of the policy, Mary Garcia, the wife of Defendant, signed a check drawn on the "Garcia Clinical Laboratory, Inc." account for $4126.84, the amount of the initial premium payment. Pl. Mot., Ex. D. The check was delivered to John Dobben, the insurance agent that filed Garcia's application, on May 3, 2001. The same day he received the check, Dobben forwarded it on to the payment processing company, Creative Marketing. Following receipt of the check, Creative Marketing noticed that the cost of the Garcia policy had been miscalculated; Garcia owed an additional $456.34 to complete the first full payment. After receiving notice of the error, a check drawn on the personal account of David and Mary Garcia was delivered to Dobben's office on May 17, 2001. Pl. Mot., Ex. F, p. 2. Old Line claims to have acknowledged receipt of this second check, five days later, on May 23, 2001. Pl. Mot., Ex. F, p. 3.

During the above course of events, on May 21, 2001, Patricia Garcia contacted her personal physician, Dr. Barbour, and had a physical exam and blood tests done. The resulting May 23, 2001 report was discussed with Patricia Garcia by Dr. Barbour on May 24, 2001. This report indicated the elevated presence of an ovarian cancer marker. Pl. Br., Ex. G. As a result of this indicator, a pelvic ultrasound was completed on May 31, 2001, however it failed to reveal any indication of cancer. Despite the negative test results, Dr. Barbour's handwritten note on the report states that Garcia "<u>strongly</u> requests a CT scan of her abdomen. [She's] worried she has cancer somewhere."

3

Pl. Mot., Ex. J, p. 2 (emphasis in original). Subsequent X-rays, CT scans, and a biopsy, all performed between June 1, 2001 and June 13, 2001, confirmed the presence of lung cancer. Def. Mot., Ex. 14-17. Despite treatment, Patricia Garcia died January 24, 2002. Def. Mot., Ex. 19, p. 2.

### B. Procedural History

To date, Plaintiff has declined to pay the policy's $2,000,000.00 death benefit to Defendant. On June 27, 2002, Old Line filed a complaint for declaratory judgment and rescission claiming that Patricia Garcia made material misrepresentations on her policy application. David K. Garcia, as the policyholder, filed an answer to the complaint, and a counter-claim for breach of contract, on August 2, 2002. Following the close of discovery, Defendant and Plaintiff each filed for summary judgment, July 29, 2003 and July 30, 2003, respectively. This Court granted summary judgment in favor of Old Line on March 18, 2004, finding that Patricia Garcia misrepresented the fact that she purchased the insurance from Old Line as "replacement" coverage and because of that misrepresentation, Old Line was entitled to a recession of the insurance policy. *See Old Line Life Ins. Co. of Am.*, 309 F. Supp 2d at 972.

Following Defendant's April 7, 2004 notice of appeal, the United States Court of Appeals for the Sixth Circuit reversed this Court's decision and remanded the case for entry of a judgment in favor of Defendant. *See Old Line Life Ins. Co. of Am.*, 411 F.3d at 615.

Plaintiff then filed a motion for clarification or rehearing with the Court of Appeals. After reconsideration, the Sixth Circuit issued a second opinion that vacated that portion of the earlier opinion that directed this Court to enter judgment in favor of Defendant David Garcia. *Old Line Life*

*Ins. Co. of Am.*, 418 F.3d at 550. While upholding the reversal of this Court's grant of summary judgment, the Court of Appeals remanded the case back to this Court to consider several issues. The Court of Appeals ordered this Court to consider whether Mrs. Garcia provided a misrepresentation on her application with respect to three issues: 1) her employment status and position; 2) her income; and 3) the existence of certain health problems at the time of the policy application and the issuance of the policy. Furthermore, this Court must determine whether Plaintiff's affirmative defense to the counter-claim, arguing that Defendant's state law breach of contract claim is barred by the Employment Retirement Income Security Act, 29 U.S.C. § 1001 et seq ("ERISA"), is applicable. Finally, the Court of Appeals left it to this Court to determine whether an award of interest is appropriate on Defendant's breach of contract counterclaim, and if so, what interest calculation is appropriate. The Court will consider each of the issues in turn.

## II. Legal Standard.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. 60 *Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id*. at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id*. at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id*.; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256, 106 S. Ct. 2505. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted); *see Celotex*, 477 U.S. at 322-23, 106 S. Ct. 2548; *Matsushita*, 475 U.S. at 586-87, 106 S. Ct. 1348.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), aff'd, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

**III.    Analysis.**

    **A.    Issues of Misrepresentation**

The Sixth Circuit Court of Appeals set forth the applicable law when determining whether a misrepresentation has occurred. The Court of Appeals held that, "to be the basis for rescission, the representation– alleged to be a misrepresentation– must relate to a past or present fact but not to a future promise." *Old Line Life Ins. Co. of Am.*, 411 F.3d at 610 (citing Mich. Comp. Laws § 500.2218(2)).

> Michigan law permits rescission of an insurance policy when the insured makes a material misrepresentation in the application for insurance. *Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327, 331, 586 N.W.2d 113 (1998), appeal denied, 460 Mich. 871, 598 N.W.2d 349 (1999). A misrepresentation is material if the insurer would have charged a higher premium or not accepted the risk had it known the true facts. *See Oade v. Jackson Nat'l Life Ins. Co. of Mich.*, 465 Mich. 244, 254, 632 N.W.2d 126 (2001).

*Id.* at 611.

      1.  Misrepresentation of Garcia's Employment Status and Position

Defendant contends that there is no genuine issue of material fact with respect to Garcia's employer and occupation at the time of her application. Defendant argues that the insured was actively employed by Garcia Clinical Laboratory and Garcia Industrial Laboratory at the time of the application. Examining the facts in a light most favorable to the non-moving Plaintiff, the Court finds that there is a genuine issue of material fact as to whether Garcia was employed and if so, what position she held. Accordingly, summary judgment is not appropriate with respect to this issue.

Defendant claims that Patricia Garcia was actively employed by both Garcia Industrial Laboratory and Garcia Clinical Laboratory. Patricia Garcia indicated on her Old Line policy application that she was "President" of "Garcia Lab." Pl. Br., Ex. A. There is no indication on the application whether she claimed to be president of one or both of the family laboratories. Defendant also claims that Patricia Garcia was elected president of Garcia *Industrial* Laboratory at the combined shareholder and director meeting held on December 20, 1999, and was not divested of the position until David Garcia was elected president at the March 17, 2003 corporate meeting. *See* Def. Br, pp. 11-12; Def. Br, Ex. 4-5. While Patricia Garcia may have been elected president on December 20, 1999, she certainly was divested of her president position before the 2003 corporate meeting because that meeting was held more than one year after Garcia's death. As a result, while it is not disputed that Patricia Garcia was elected president, whether she remained president at the time of the policy application is unclear.

Plaintiff argues that Garcia was not president of either lab when she completed the policy application. Plaintiff claims other forms filled out by Garcia indicate she had retired and remained

8

so, even after her alleged election as president. Two "Recent Health History" forms, one completed on November 12, 1998, one year before the alleged election, and one form completed on December 24, 1999, four days *after* the alleged corporate meeting at which Patricia Garcia was elected president support this argument. On both forms, when asked about her occupation, Garcia indicated she was "retired." Pl. Br., Ex. M, p. 1-2.  Further calling into question Garcia's election as president of Garcia Industrial Laboratory, is the April 25, 2001, Michigan Bureau of Commercial Services "Profit Corporation Information Update" form. This form was signed by Mary Garcia, daughter-in law of Patricia and wife of Defendant, as an authorized officer holding the title of "Pres[ident]." *See* Pl. Br., Ex. L. Although Defendant asserts that Mary's signing as president was indicative of her title with Garcia *Clinical* Laboratories, this form was for Garcia *Industrial* Laboratories, not the Clinical Laboratory. That signature further adds to the confusion surrounding Patricia Garcia's position.

Defendant claims that even if there is a genuine issue about Garcia's status and position , Plaintiff cannot survive summary judgment because this issue was not material as to whether the policy would have been issued. Defendant claims the deposition of John Rugel, Old Line's Director of Underwriting, is dispositive on this issue. Rugel testified that even if Old Line had found out Patricia Garcia was not president of Garcia Labs, she still would have qualified for the Policy. Def.'s Br., Ex. 21, Dep. of Rugel at p. 6. Plaintiff, however, argues that the deposition testimony of Sharon Powers, Director of Life Insurance of Old Line, is dispositive on the issue when she stated that she specifically relied on, among other statements, Patricia Garcia's assertion that "she was President of a Lab." Pl. Br., Ex Q, p. 3.

9

Consequently, given the conflicting assertions as to whether Patricia Garcia misrepresented her employment status at the time of her application, whether Old Line relied on any potential misrepresentation, and whether this misrepresentation was material to the risk and hazard accepted by Old Line, the Court concludes that there is a genuine issue of material fact necessary for the resolution of this issue. Defendant's motion for summary judgment on this issue is therefore denied.

2.      Misrepresentation of Patricia Garcia's annual income

Defendant next contends that there is no genuine issue of material fact as to whether Garcia misrepresented her annual income on the policy application. On that application, Garcia listed her income as "100,000 +." Pl. Br., Ex. A, p. 2; Def. Br., Ex. 3, p. 1. Plaintiff argues that there is an issue of material fact because the evidence indicates that Garcia's "*earnings* were only approximately $40,000 per year." Pl. Br., p. 13 (emphasis added). Plaintiff's arguments are misleading at best. Plaintiff's policy application did not ask Garcia what her *earnings* were, instead it asked what her *income* was. Although it is true that the financial statement Garcia submitted with the application indicates she had $40,000 in "salary or wages", it also indicates she had $210,000 in "unearned income." Pl. Br., Ex. P. This is entirely consistent with her answer to the inquiry as to "income" on the policy application. Furthermore, Patricia Garcia's 2000 and 2001 federal income tax forms indicate that she had an adjusted gross income of $240,701 and $257,881, for those two years respectively.

Plaintiff also argues that Sharon Powers testimony demonstrates that there is an issue of misrepresentation with respect to Garcia's income. However, a review of the Powers' testimony indicates that although Powers initially questioned Mrs. Garcia's income, upon further inquiry she

came to the conclusion that Garcia's income was, in fact, in excess of $100,000:

> Q: Did you ever learn that [Patricia Garcia's] income was not over $100,000 per year?
> A: We had reason to question that or the financial statement, but then we were told again that her income was a hundred thousand . . .
> ***
> Q: All right. Can you point to me any document that would indicate that her income was not over $100,000 at the time that she applied for the life insurance?
> A: Again, the financial statement indicates that her earnings were 40,000, and we had to ask for clarification. There was some conflicting statements.
> Q: Did you obtain information that indicated her income was – income now, not just earnings, but total income was over $100,000 per year?
> A: Yes.

Pl. Br., Ex. Q, Dep. of Powers, pp. 66-68.

Consequently, after considering the facts above in a light most favorable to Plaintiff, there is no issue of material fact as to whether Patricia Garcia's income was in excess of $100,000 as she attested to on the Old Line insurance policy application. Considering whether Garcia misrepresented her income on the policy application, no reasonable jury could find for Plaintiff. *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, Defendant is entitled to summary judgment on this issue.

### 3. Patricia Garcia's Health Status

On remand, the Sixth Circuit asked this Court to consider "whether the insured misrepresented: . . . the 'existence of certain health problems at the time of her Policy Application and did not update her health status in the four months between the time of the Policy Application and the issuance of the Policy.' " *Old Line Life Ins. Co. of Am.*, 418 F.3d at 549. In order to properly adjudicate the motion for summary judgment now before the Court, the Court will examine

11

this issue in several parts. First, the Court must determine if Patricia Garcia misrepresented the existence of certain health problems at the time of her policy application. Second, the Court must examine whether an applicant, under the policy application, has a continuing duty to update Old Line as to their health status until the policy takes effect. Finally, if the applicant does have a duty to update Old Line as to their health status, the Court must consider whether Garcia violated that duty.

      i.     Misrepresentation as to health problems at the time of Garcia's application.

When Garcia applied for the Old Line policy in January of 2001, she indicated that she had never "been diagnosed as having, been treated for, or consulted a licensed health care provider for: . . . any cancer, cysts, tumors, masses, or other such abnormalities." Pl. Br., Ex. B, p.2; Def. Br., Ex. 11, p. 1. Plaintiff does not now present any evidence that at the time Patricia Garcia filled out the application, Garcia had sought treatment for, or believed she had, cancer. Therefore, as a preliminary matter, considering the "existence of certain health problems at the time of her Policy Application," *Old Line Life Ins. Co. of Am.*, 418 F.3d at 549, this Court finds that there is no genuine issue of material fact.

      ii.     Duty to update Old Line as to the existence of a health condition

An examination of Mrs. Garcia's duty to update Old Line must begin with the terms of the application. That application, which Mrs. Garcia signed on January 12, 2001, states in relevant part,

> I understand and agree that no insurance will be in effect pursuant to this application, or under any policy issued by the company, unless or until: the policy has been delivered and accepted; the first full modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would

12

change the answers to any questions in the application.

Pl. Br., Ex. A, p. 5.

The language of the policy clearly creates three conditions for the policy to take effect. First, the policy must be delivered and accepted. Second the first full premium payment must be paid. Third, the policy takes effect only if, at the time the first two conditions are met, there has been no change in the applicant's health status that would require them to change their answers to the policy application. Such a condition necessarily implies that if the applicant wants the policy to take effect, they take affirmative action must update the insurance company as to the discrepancy between the application answers and the then existing health condition. Consequently, the Court finds that when the policy in question was otherwise paid for, accepted and delivered, Patricia Garcia had a duty to update Old Line if she would have then given any answers that differed from the answers she supplied on the initial policy application.

          iii.      Did Patricia Garcia violate her duty to update Old Line with respect to her health condition?

Considering the policy's conditions with respect to the instant case, the parties are in agreement that the first condition, delivery and acceptance of the policy was completed on May 1, 2001. Def. Br, p. 18; Pl. Br., p. 8. Turning to the second condition, Garcia made the first payment on May 3, 2001. After receipt by the payment processing company, however, it was determined that the policy premium had been miscalculated. Subsequently, a second payment was given to insurance agent John Dobben on May 17, 2001, and was received by Old Line on May 23, 2001. Pl. Br., p. 8, Ex. F; Def. Br., p. 18. Although Plaintiff admits that the policy may have been effective

as of May 17, 2001, this court assumes *arguendo* that May 23, 2001 was the date of the first full payment.[2]  According to the third condition then, the Court must determine if there is a genuine issue of material fact that, as of May 23, 2001, Patricia Garcia had a change in her health status that would have required her to update her application.

Defendant argues that Garcia did not have a change in her health status that would have required her to update her policy application until June 2001, the time in which she was affirmatively diagnosed with lung cancer and the month following her application otherwise taking effect.  Plaintiff instead asks this Court to speculate from the facts, inconvenient as they are to Plaintiff, that Patricia Garcia "may have actually known, or at least had reasonable cause to believe . . . that she had a specific disease, cancer, prior to the effective date of the policy." Pl. Br., p. 9.  Although this Court must examine the facts in a light most favorable to the non-moving Plaintiff, mere allegations, unsupported by any specific facts that raise a genuine issue, will not survive a summary judgment.  *See* Fed. R. Civ. P. 56(e).  Accordingly, in the instant case, the Court finds there is no genuine issue for trial with respect to this claim.

Plaintiff argues that Garcia's scheduling of an appointment to have a physical examination and blood tests on May 21, 2001, just four days after submitting her second attempt to pay the first full premium payment on the policy and two days before May 23, 2001, indicates Garcia may have had knowledge that she had cancer before the policy was effective.  Those test results, given to

---

[2] The parties have not briefed the issue of what date should be considered as the date on which full payment of the first premium was made.  Although the Court can conceive of several dates that may, with proper legal support, be considered to be date the first full modal premium was made, because the Court has not been presented with those arguments and because under Defendant's renewed motion for summary judgment the Court must examine the facts in a light most favorable to the non-moving Plaintiff, the Court now uses the latest possible date, May 23, 2001.

Garcia on May 24, 2001, one day *after* the first full premium payment was made, indicated the elevated presence of an ovarian cancer blood marker.  Furthermore, this blood test analysis, performed on May 23, 2001, was performed at one of the Garcia family laboratories.  Plaintiff also argues that note on Garcia's May 31, 2001 pelvic ultrasound, "P[atien]t strongly requests a CT scan of her abdomen.  P[atien]t worried she has cancer somewhere," indicates Garcia improperly failed to update Old Line as to her health status before the policy went into effect.

The Court finds Plaintiff's arguments unpersuasive.  Plaintiff's blood test results, indicating a potential marker for ovarian cancer were not given to her until May 24, 2001, one day *after* the latest possible date the policy could have gone into effect.  Although the blood analysis was done at one of the Garcia laboratories, Plaintiff does not allege any facts to support the inference that Patricia Garcia was made aware of the results before May 23, 2001.  Furthermore, the notation on Garcia's pelvic exam test results, the note Plaintiff argues indicates that Garcia may have known about her cancer before the policy took effect, was completed on May 31, 2001, more than one week *after* the policy otherwise took effect.  Stated simply, the Court has been presented no evidence that Garcia had knowledge at the time the policy had been paid for, delivered, accepted, that would have led her to change any answer on her policy application.  Consequently, after examining the facts in a light most favorable to the non-moving Plaintiff, the Court is unable to conclude that there is a genuine issue of material fact with respect to this claim.  Summary judgment on this issue, in favor of Defendant, is therefore appropriate.

      **B.**      **Consideration of Old Line's ERISA affirmative defense**

On remand, the Sixth Circuit specifically left it to this Court "to determine whether it is appropriate in light of applicable jurisprudence and the facts and circumstances of this case for Old Line's ERISA affirmative defense to be considered." *Old Line Life Ins. Co. Of Am.*, 418 F.3d at 550. The Court of Appeals recognized that affirmative defenses must be set forth in a party's initial pleading; affirmative defenses not so pleaded are generally waived. *See* Fed. R. Civ. P. 8(c); *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). Plaintiff did not raise the ERISA preemption claim in its answer to Defendant's counter-claim; instead, Plaintiff appears to first raise the defense in its motion for summary judgment filed on July 30, 2003, nearly one year after Plaintiff's August 5, 2002 counter-claim was filed.

Despite the obvious outstanding issue of whether this Court should now consider the affirmative defense, Defendant's renewed motion for summary judgment argues only that this Court should "follow the Sixth Circuit and determine that E.R.I.S.A. is not to be considered." Def. Br., p. 20. Left without any other argument on the issue of whether the ERISA defense should be considered, this Court has not been properly apprised of the merits of this issue. Consequently, because the Court finds that it would not be proper or prudent to determine whether the facts in the instant case support ERISA preemption of Defendant's state law breach of contract claim without first ascertaining whether the assertion of the defense is proper, the Court will order the parties to submit supplemental briefing on the issue. The parties briefs, limited to eight pages in length, shall plainly and clearly set forth with sufficient legal and factual support: (1) whether Plaintiff's ERISA preemption defense has been waived by Plaintiff, and (2) whether the facts in the instant case support the assertion of an ERISA preemption defense. No response to these supplemental briefs

shall be allowed.

### C.    Calculation of interest Garcia may be entitled to receive

Finally, although the Court of Appeals recognized Defendant's argument that he is entitled to interest on the breach of contract claim, the Court declined to rule on the issue. *See Old Line Life Ins. Co. of Am.*, 418 F.3d at 550. Likewise, because there has been no finding that Defendant is entitled to relief on its counter-claim, the Court believes that any determination of whether Defendant is entitled to interest on his judgment, and if so, in what amount, is premature at this juncture of the proceedings.

## IV. Conclusion

After a thorough consideration of the issues presented in this cause of action, the Court finds that there remains a genuine issue of material fact as to whether Patricia Garcia misrepresented her employment status and position at the time of the Old Line policy application. Accordingly, **IT IS HEREBY ORDERED THAT** Defendant's renewed motion for summary judgment is **DENIED WITH RESPECT TO THIS LIMITED ISSUE**.

Turning to consider the other issues of misrepresentation, the Court finds that there is no genuine issue of material fact as to whether Patricia Garcia misrepresented her income or her health status at the time she completed the policy application. Furthermore, although an individual applying for insurance under the policy application in the instant case has a duty to update Old Line if any of the applicant's health questionnaire answers would be different when the policy has otherwise been has been delivered, accepted, and paid for, than those answers given at the time of the original application, Plaintiff has failed to raise a genuine issue that Patricia Garcia had such a

change in her health status.  Accordingly, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED WITH RESPECT TO THIS LIMITED ISSUE**.

Finally, for the aforementioned reasons, the parties shall **SUBMIT** supplemental briefs within **FIFTEEN (15) DAYS** of the filing of this order, limited to eight pages in length, that shall plainly set forth with sufficient legal and factual support: (1) whether Plaintiff's ERISA preemption affirmative defense was waived by Plaintiff, and (2) whether the facts in the instant case support the assertion of an ERISA preemption defense.

**SO ORDERED.**

Dated:  September 29, 2006                                s/Paul V. Gadola
                                                          HONORABLE PAUL V. GADOLA
                                                          UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   October 3, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
     Michelle Thurber Czapski; Kelley M. Haladyna; John P. Nicolucci; Stephen O. Schultz     ,
and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                                      .

                                                          s/Ruth A. Brissaud
                                                          Ruth A. Brissaud, Case Manager
                                                          (810) 341-7845